UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN S. KING, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )    Docket No. 05-156-B-W |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     *Defendant* | ) |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that he is disabled by chronic myofascial low-back pain, is capable of returning to past relevant work as a computer technician. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff's allegations regarding his limitations were not credible for reasons set forth in the body of the decision, Finding 5, Record at 22;

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on May 26, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

that his past relevant work as a computer technician did not require the performance of work-related activities precluded by his residual functional capacity ("RFC"), Finding 7, *id*.; that his medically determinable depression and disorders of the back did not prevent him from performing his past relevant work, Finding 8, *id*.; and that he therefore had not been under a disability at any time through the date of decision, Finding 9, *id*.[2] The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

---

[2] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD only through December 31, 2003, *see* Finding 1, Record at 21, nearly a year prior to issuance of the administrative law judge's decision on October 28, 2004, *see id*. at 22. However, inasmuch as the administrative law judge did not find the plaintiff disabled at any time prior to decision, there was no need to undertake a separate SSD analysis.

The plaintiff complains that the administrative law judge improperly assessed both the medical evidence of record and his credibility. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8). His points are unpersuasive.

### I. Discussion

### A. Assessment of Medical Evidence

At hearing, the plaintiff testified that he suffered (i) constant lower back pain, varying in intensity from seven to nine on a scale of ten, with ten being the worst, (ii) pain in his mid- and upper back thirty to forty percent of the time, varying in intensity from a four to a seven and (iii) constant neck pain. *See* Record at 50. He further testified that he needed to alternate constantly between sitting and walking around (every ten to thirty minutes), *see id*. at 38-39, and that when he had a back spasm, which happened frequently (from daily to every three days), he would be incapacitated from doing anything for a period ranging from two minutes to four hours, *see id*. at 40. He stated that he did not handle knives because if he happened to have a spasm and his arm jerked, the knife would fly out of his grasp. *See id*. at 43.

The administrative law judge declined to accept these allegations at face value, explaining:

> For the same reasons cited by Dr. Hall [Disability Determination Services non-examining consultant James H. Hall, M.D.], the undersigned finds that the claimant's allegations of disabling pain, and spasms[,] are not supported by the objective medical evidence of record. Specifically, imaging techniques have been normal, and findings on neurological examination have also been consistently normal. When Dr. Caccamo [treating physician Eric J. Caccamo, D.O.] first examined the claimant on May 10, 2001, he noted spasms along the thoracic paraspinal musculature and mild spasms in the lumbar spine, but none thereafter. Findings on subsequent examinations were normal with no evidence of atrophy, spasms, or tender points. The undersigned also notes that examining physicians have described the claimant's gait as slow and wide based and also described his gait as normal, although the claimant alleges constant pain. Dr. Ross noted that the claimant described his pain as 8/10, but he sat comfortably, appeared relaxed and buoyant, and moved fluidly. The undersigned also notes that the VA assessed the claimant with a 20 percent disability. Although the criteria the VA uses for rating disability differ[] from [those of] the Social Security

>Administration, a 20 percent disability rating cannot be equated with total disability, regardless of what criteria may be used.

*Id*. at 20.

The plaintiff takes issue with this assessment, asserting that the administrative law judge wrongly concluded that the objective medical evidence did not buttress his subjective complaints.  *See* Statement of Errors at 4-6.  Specifically, the plaintiff asserts, the administrative law judge erred in (i) refusing to give much weight to the records of a treating chiropractor (Robert D. Clark, D.C., R.T.), (ii) misstating the contents of the records of treating physician Dr. Caccamo and (iii) embracing an erroneous finding by Dr. Hall that the plaintiff's lumbosacral x-rays were normal.  *See id*.  None of these points warrants reversal and remand.

At hearing, the plaintiff's counsel attempted to bolster his client's case with reference to the records of Dr. Clark.  *See* Record at 26.  The administrative law judge commented: "We're not permitted to consider, that's from a non acceptable medical source so we can't consider the, we can't give controlling weight or really even much weight to chiropractic opinion."  *Id*. at 26; *see also id*. at 37 (asking counsel, "What about clinical observations, not by the chiropractor because that's not a medically acceptable source?").  In his decision, the administrative law judge made no reference to the records of Dr. Clark.  *See id*. at 14-22.

Chiropractors are not "acceptable medical sources"; accordingly, their records cannot be used to establish the existence of a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1).  However, records of such sources may be taken into account for other purposes.  *See id*. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources [including chiropractors] to show the severity of your impairment(s) and how it affects your ability to work.").

4

The plaintiff complains that the administrative law judge erred when he did not take Dr. Clark's evidence into account for those other stated purposes. *See* Statement of Errors at 5. As a threshold matter, it is questionable whether even an out-of-hand rejection of evidence emanating from a non-acceptable medical source constitutes error. *See, e.g., Evans v. Barnhart*, 92 Soc. Sec. Rep. Serv. 568, 573-74 (D.N.H. 2003) ("[W]hile § 404.1513(d) provides that the Commissioner may use evidence from 'other sources' to evaluate the severity of a claimant's impairment, the language of that provision is permissive rather than mandatory. In other words, it is not at all clear that the ALJ was under any obligation to consider Nurse Thomas's RFC questionnaire.").

In any event, even assuming *arguendo* that such a rejection can constitute error, it was harmless in this case. The plaintiff posits that Dr. Clark's records from September and October 2003 "indicate a number of back spasms and constant soreness in [the plaintiff's] back." Statement of Errors at 4. However, as counsel for the commissioner suggested at oral argument, the cited records more accurately can be said to reflect the plaintiff's own subjective complaints of such symptomatology, *see* Record at 362-64, and thus do not call into question the administrative law judge's finding of lack of objective medical underpinning. Further, even if Dr. Clark's records could be construed as providing objective medical underpinning for the plaintiff's allegations, there is substantial contrary objective medical evidence of record, including the assessments of Dr. Hall and a second DDS non-examining consultant, Lawrence P. Johnson, M.D. *See id*. at 178, 186-87. Thus, even had the administrative law judge explicitly taken into account the Clark records, he still supportably could have arrived at the same conclusion. Error in handling the Clark evidence, if any, accordingly does not warrant reversal and remand.

The plaintiff next complains that the administrative law judge mischaracterized Dr. Caccamo's records. *See* Statement of Errors at 5. The administrative law judge stated: "When Dr. Caccamo first

examined the claimant on May 10, 2001, he noted spasms along the thoracic paraspinal musculature and mild spasms in the lumbar spine, but none thereafter. Findings on subsequent examinations were normal with no evidence of atrophy, spasms, or tender points." Record at 20. As the plaintiff points out, this statement was not entirely accurate: Dr. Caccamo noted the existence of spasms on examination on July 2, 2003. *See* Statement of Errors at 5; Record at 385.[3] Nonetheless, the error was harmless. Dr. Caccamo saw the plaintiff twice in 2001, three times in 2002, six times in 2003 and three times in 2004. *See* Record at 331-345, 372-85. On the majority of those occasions, including all occasions in 2004, he checked a box on the second page of a two-page preprinted form indicating that the plaintiff's musculoskeletal condition was normal, with no spasms or tender points noted. *See id*. The administrative law judge therefore accurately captured the overall flavor of the Caccamo records.[4]

The plaintiff finally challenges the administrative law judge's adoption of Dr. Hall's finding that his x-rays were normal. *See* Statement of Errors at 5-6; Record at 20, 186. He asserts that his "lumbosacral x-ray dated Oct[ober] 10, 1998, is classified as Major Abnormality, and his cervical and thoracic x-rays were almost consistently abnormal." Statement of Errors at 5-6 (citations omitted).

---

[3] While, as the plaintiff points out, *see* Statement of Errors at 5, on September 17, 2003 Dr. Caccamo checked boxes under the heading "Musculoskeletal" indicating the existence of lower back pain, stiffness, decreased range of motion and muscle pain, *see* Record at 380, he also checked a second Musculoskeletal box indicating: "Normal: no spasms in C, T, LS areas, no tender points or soft tissue changes, full ROM[,]" *see id*. at 381. To some extent, these findings appear contradictory (specifically, as concerns range of motion); however, the administrative law judge supportably could have interpreted them to mean that Dr. Caccamo noted no spasms or tender points that day.

[4] Both in his Statement of Errors and via counsel at oral argument, the plaintiff complained that the administrative law judge made no allowance for the fact that, despite office notes indicating musculoskeletal normalcy, Dr. Caccamo was seeing the plaintiff for, and focusing on, a number of other ailments, having referred the plaintiff to specialists (such as Dr. Clark) who were focusing on, and treating, his ongoing back problems. *See* Statement of Errors at 6. Nonetheless, Dr. Caccamo did not leave checkboxes relating to the plaintiff's musculoskeletal condition blank or otherwise indicate that he was not assessing that condition. Thus, the administrative law judge reasonably construed the Caccamo notes as generally supporting a conclusion that objective findings of back problems were lacking.

The October 1998 Veterans Administration x-ray report to which the plaintiff refers states at the top and bottom: "Diagnosis: MAJOR ABNORMALITY"; however, the reviewing physician's "[i]mpression" was: "Partial sacralization of L5, as above described." Record at 268.[5] It is unlikely that the "diagnosis" represents a finding based on the x-ray (as opposed to a diagnosis leading to the request for an x-ray). The Veterans Administration again took x-rays of the plaintiff's lumbosacral spine in September 2001 and came up with the same findings (partial sacralization of L5 with large, batwing-type transverse process). *See id*. at 239. Tellingly, this latter x-ray was noted in Veterans Administration records to have been "unremarkable." *Id*. at 241. In any event, while mild or clinically insignificant changes were noted in some subsequent diagnostic studies, all such studies fairly can be described as unremarkable. *See id*. at 194 (report dated April 28, 2000 of MRI of lumbosacral vertebral column finding "sclerotic changes in the pas interarticularis at L5 bilaterally and the right side of L4 without evidence of spondylolysis," a "[v]ery minimal bulge of displaced material . . . present at L4-L5 of no clinical significance" and "[n]o evidence of spinal stenosis, lateral recess stenosis, or other abnormality"), 368 (report dated September 24, 2003 of x-rays of lumbar spine showing "normal lumbar spine"), 369 (report dated September 24, 2003 of x-rays of cervical spine showing "early degenerative changes"), 370 (report dated September 24, 2003 of x-rays of thoracic spine showing "no fracture or malalignment" and "early degenerative changes"), 386 (report dated August 11, 2004 of x-rays of thoracic spine describing "stable unremarkable exam"), 387 (report dated August 11, 2004 of x-rays of lumbar spine finding no abnormality), 388 (report dated August 11, 2004 of x-rays of cervical spine noted to be "unremarkable"); *see also, e.g., id*. at 346 (report dated June 5, 2003 of consulting neurological surgeon Eric P. Omsberg, M.D., noting "MRI is

---

[5] The reviewing physician elaborated: "There is partial sacralization of L5, with large, batwing-type, transverse process on the left, which appears to articulate with the sacrum and pelvis. The lumbosacral junction is diminished. Vertebral body axial height and intervertebral disc spacing appear preserved, otherwise. The pedicles appear intact. Osteophyte formation is only very minimally
*(continued on next page)*

pristine."). The administrative law judge committed no error in characterizing the plaintiff's x-rays as normal.

The bottom line: To the extent the administrative law judge erred in his handling of the medical evidence offered in this case, the errors are immaterial. His finding that the plaintiff's alleged symptomatology was inconsistent with the objective medical evidence is well-supported by the evidence of record.[6]

### B. Credibility Finding

The plaintiff next, and finally, complains about the administrative law judge's credibility determination, making a detailed case for the proposition that the medical and other evidence of record buttresses (or, at least, does not directly contradict) his allegations of disabling pain and spasms. *See* Statement of Errors at 6-8. The problem for the plaintiff is that the commissioner need surmount a relatively low hurdle to support a credibility finding and handily does so in this case.

As the First Circuit has noted, "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). In this case, the administrative law judge based his negative credibility determination primarily on lack of corroborating objective medical evidence, coupled with Dr. Ross's observation that although the plaintiff rated his pain as an eight on a scale of one to ten, he sat comfortably, appeared relaxed and

---

suggested. Lumbar lordosis is well-maintained." Record at 268.

[6] As Dr. Hall suggested, the Record contains, in addition to unremarkable x-ray and MRI results, reports of two physicians to whom Dr. Caccamo referred the plaintiff for consultation indicating that the plaintiff tended to magnify his symptoms. *See* Record at 186-87; *see also id*. at 232 (report of Alan D. M. Ross, M.D., dated November 5, 2001 noting: "His low back pain is 8/10 today. However, he sits comfortabl[y], appears relaxed and buoyant, and moves fluidly."), 233 (report of Dr. Ross dated July 20, 2001, noting: "He seems a bit fixated on his symptoms, and he likes to describe them in detail. There is moderate pain behavior with physical exam."), 346 (report of Dr. Omsberg dated June 5, 2003 stating: "On exam he has definite pain behavior, elaboration when palpating the mid and lower lumbar spine. He is overweight and deconditioned.").

buoyant and moved fluidly.  *See* Record at 20.  As discussed above, these points are supported by substantial evidence of record.  Accordingly, there is no basis on which to disturb the administrative law judge's credibility finding.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge